(108 App. Div. 341.)

### KLEIN v. AMERICAN CIGAR CO.

(Supreme Court, Appellate Division, First Department. November 10, 1905.)

1. WORK AND LABOR—EVIDENCE.

 In an action for services in the operation of a machine, plaintiff is not entitled to the value of his services as a chemist, where it is not shown that only a chemist could operate the machine.

2. SAME—TRIAL—VERDICT.

 Where plaintiff sues for services, material, and expenses connected with the operation and construction of a machine, and the jury finds a certain sum, and there was no evidence of the value of the services rendered by the plaintiff, and there is nothing to show upon what theory the jury found the verdict as rendered, it will be set aside.

Appeal from Trial Term, New York County.

Action by Emanuel Klein against the American Cigar Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and CLARKE, JJ.

A. P. Massey, for appellant.
J. M. Goodale, for respondent.

PATTERSON, J. The judgment in this case must be reversed because of a ruling of the court below in permitting the plaintiff to testify on an erroneous assumption as to the value of his services; that matter being one of the important issues in the case and constituting a part of the plaintiff's cause of action. It is set forth in the complaint that the plaintiff, at the request of the defendant, performed certain work, labor, and services, paid out and expended certain moneys, and furnished certain materials and machinery, all of the reasonable value of a sum stated. The defendant in its answer denied those allegations of the complaint. On the trial, the plaintiff testified in effect that he was the patentee of a certain process for the production of ink prepared for printing on cigars. In the language of the plaintiff:

"If you smoke the cigar, the name appears in the ashes in the color which I apply on the tobacco. I invented the idea, mostly, for a machine for printing on the cigars. * * *"

It appears, further, in the record, that the plaintiff made an offer in writing to Nathan Weiss, who was an officer of the defendant corporation, to sell the patents for his invention. Mr. Weiss, as third vice president of the defendant, wrote to the plaintiff, stating as follows:

"As quickly as possible, you will erect for experiment at our Eightieth Street branch one of your cigar printing machines that prints the cigar without the

ink being discernible, and we would like to see the result of this experiment before entering into any further details."

The plaintiff testified that he went to see Mr. Weiss, and the latter said to him:

"You put up the machine in the factory, in the Eightieth Street branch, and try there the machine, and if the machine is all right and the cigars are well, the American Cigar Company will buy it."

The plaintiff says he declined to deal with the American Cigar Company, because it was connected with the American Tobacco Company and the Continental Tobacco Company, but Weiss assured him that it was not so; that the defendant would buy; and that after much other conversation the plaintiff said:

"Now, Mr. Weiss, if I shall put up this ink, and the American Cigar Company would not buy this, who will pay me for my work."

And Weiss said:

"What would you like to get for it?"

And the plaintiff stated:

"$500 is for the ink, which I try to bring out or try to change."

Weiss then said:

"All right, if the American Cigar Company would not buy it, certainly they will pay you; but I am most assured they will buy it."

It is fairly to be assumed that the plaintiff was to be paid for his services while the machine was being tested. It appears that the machine was sent to the defendant's factory, and remained there from September 11 to November 9, 1902. In that interval the plaintiff worked at the machine, used ink, and applied it to the roller and experimented in the operation of the machine. It was not bought by the defendant, but on November 10, 1902, Weiss wrote to the plaintiff to call and take it away. Meanwhile correspondence and negotiations had taken place between the plaintiff and the American Cigar Company concerning its purchase. On October 30, 1902, a letter signed by the "American Cigar Company, per W. S. Luckett," was sent to the plaintiff in which an offer of $10,000 cash was made for all the plaintiff's patents and all property, to wit, all ink, raw material for ink, machinery which the plaintiff had on hand, and all machinery in the possession of a third party, which was being built under the plaintiff's orders, the payment to be conditional upon the plaintiff being able to turn over unincumbered all the property and an acceptance or rejection of the offer to be made before noon of the following day. It does not appear that this offer was accepted or that any contract was actually made respecting the purchase of the machine. Nevertheless, it is clear that there was some arrangement made between the plaintiff and the defendant with respect to the delivery and experimental operation of the machine at its place of business.

The cause of action as alleged was not strictly proven, but it was shown that the plaintiff performed work, labor, and services in operating the machine, and it is plain from the record that there were three things, for all or either of which the jury might have found a verdict in favor of the plaintiff: First, $500 for getting ink ready; second,

reasonable compensation for operating the machine during the experimental period; and, third, expenses of the plaintiff incurred in the matter. The judge charged the jury that, if they thought there was no definite agreement to pay the plaintiff $500, they could not find a verdict for that; so, if they found the defendant was otherwise liable, they could give the plaintiff reasonable compensation for the number of days which they thought, from the evidence, he was engaged in testing the machine. The jury brought in a general verdict of $750. How that sum was arrived at does not appear. During the course of the trial, the plaintiff, being under examination as a witness, was asked what in his opinion was the reasonable value of his own services between September 10th or 11th and November 10th, referring to the period during which the machine was being operated. This question was objected to on the ground that it did not appear in any way that the plaintiff was qualified as an expert witness to testify to the value of services in operating the machine; for that was all he did with it. He fixed the value of his services at $1,300, because he was a chemist and the value of his time as a chemist was the basis of his testimony; but what he was entitled to claim for was the value of his time in operating the machine, and it was not shown that only a chemist could operate it. He was to be paid for the ink by special contract, and he was to be paid his expenses. Work, labor, and service connected with the operation of the machine is an entirely independent subject. Now, it is true that the verdict is only for $750; but, for all that we are able to gather from the record, that $750 may have been awarded for services in operating the machine only, and the jury may have rejected altogether the plaintiff's claim of a contract existing for $500 for the ink. We cannot speculate upon the method by which the jury reached this sum. We think it evident that the plaintiff was not entitled to be paid for his services as a chemist during the time the machine was being tested, and there is no proof whatever in the case of the value of services rendered during that period.

For that reason the judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.